MERIDIAN COCA-COLA CO. *et al.* *v.* WATSON *et al.*

(Division A.   June 1, 1931.)

[134 So. 824.   No. 29325.]

· **V. W. Gilbert,** of Meridian, for appellants.

Williamson & Clayton, of Meridian, for appellees.

112

Argued orally by **Victor W. Gilbert**, for appellant, and by **Nate S. Williamson**, for appellee.

**McGowen, J.**, delivered the opinion of the court.

The appellee J. B. Watson sued the Meridian Coca-Cola Bottling Company and others, appellants, for damages for injuries resulting in the death of his wife, Mrs. Ganie Watson, alleged to have been caused by the negligence of the driver of the bottling company's truck. Issue being joined, the case was tried and submitted to a jury, resulting in a verdict for twenty thousand dollars; and from the judgment thereon in the court below, defendants prosecute an appeal here. While the case was pending Watson was adjudged non compos mentis, and W. R. Zachary was appointed his guardian, and made a party to the suit.

The facts essential to an understanding of the opinion are as follows: In the early afternoon of **November 8**,

1929, Mrs. Ganie Watson, wife of the appellee, a pedestrian on the sidewalk, had proceeded through a subway on Twenty-Eighth avenue in the city of Meridian, going from the south, northward to the business center of the city. The subway, or underpass, is about four hundred feet in length, along the west side of which a sidewalk extends north and south, with a guard rail along its outer edge from the entrance on the north and twenty-seven feet north. When she reached the end of the guard rail, Mrs. Watson started across this street, ostensibly for the purpose of ascending a stairway built by the city, consisting of about seven steps. There was no sidewalk on the east side, but this stairway, which connected with a concrete sidewalk on the surface leading to the business center, is guarded by a railing extending a few feet into the street, about opposite the guard rail on the west side.

The subway or underpass was constructed for the purpose of accommodating travelers, both pedestrians and in vehicles, under the railroad. Mrs. Watson was accompanied by Mrs. Coker, whom she preceded a step or two, going east directly across the street. The subway was divided into two sections by a colonnade in the center thereof, making two passageways for travel, each fifteen feet wide, the west side for those going south, and the east side for those going north; and about the center of the subway was a skylight. Toward the north end of the subway there was a hole or defective place. Mrs. Watson was struck after she had crossed the western portion of the street, the uncovered part of which was thirty-four feet wide.

There is a variance between the witnesses as to whether Mrs. Watson was nearer the east side, or whether she was nearly in line with the colonnade; but at all events, she was struck by the motortruck of the Coca-Cola Bottling Company, the left light and fender striking her and throwing her upon the fender, and carried

her thereon a distance of not less than fifty-seven feet, when she was dragged therefrom, and the left front and rear wheels of the truck passed over her body. She was badly mangled, and, on being carried to a hospital, died within two hours from the time of the injury. There was a conflict in the evidence as to whether or not she suffered pain. Witnesses for the plaintiff testified that the truck was running at a rate of speed ranging from thirty to thirty-five miles per hour, while the driver, Alex Harris, testified that he was running eight or ten miles an hour; and a lady who followed him in the car testified that he was running twelve or fifteen miles an hour. The truck was proceeding north through the eastern side of the passway, but near to the left, or west side, thereof. One witness said that Mrs. Watson would not have been injured had the driver not veered suddenly to the left after emerging from the underpass.

From the covered portion of the underpass, north to the top of the street is one hundred eighty-seven and one-tenth feet wide, an elevation of five and seven-tenths feet minimum per cent in the grade, a fall of seven and seven-tenths feet to every one hundred feet. Harris, the driver, testified that he was looking toward the north, and did not see Mrs. Watson until she just about to fall from the fender of the truck, though the lamp and the fender of the truck showed considerable impact with some object.

It was proved that the place where the accident occurred was habitually used by pedestrians in crossing from the west to the east side to ascend a stairway, in order to proceed on the sidewalk to the business center. There was no marked line across the street at this point. The evidence establishes that this place was habitually and frequently used by pedestrians as a street crossing, and the truck driver, Alex Harris, testified that he knew of this fact. There was a constant roar in the subway, and witnesses testified to the fact that it was a dangerous

street crossing. None of the witnesses saw Mrs. Watson stop, look, and listen after she reached the center of the street, opposite the colonnade, before crossing the east-side.

Above the level of travel, on the columns at either end of the subway, was this sign: ''Reduce speed to eight miles an hour.'' The ordinances of Meridian permit a maximum speed of fifteen miles an hour on the streets; but there is no ordinance fixing the rate of speed in a subway, or the approach thereto, unless this sign shall be construed to have the effect of an ordinance.

There are many assignments of error, but we have reached the conclusion that it is necessary for us to consider only two instructions for the giving of which this cause must be reversed, and deem it unnecessary to express an opinion as to any other, as the case must be tried again.

The first instruction complained of is in these words: ''The court charges the jury for the plaintiff that it would be a violation of the law for the defendants to have operated the automobile truck through the subway in question or at the place where it struck Mrs. Ganie Watson, at the time and place in question, at a greater rate of speed than eight miles per hour under any circumstances, in evidence in this case, or to have so operated said truck as to have negligently endangered the life or limb of any person or the safety of any property, and if you believe from a preponderance of the evidence that the defendants negligently caused the same to be operated so as to violate said law and that Mrs. Ganie Watson was injured and died as proximate result of said negligence, if any, or if said negligence, if any, contributed, in whole or in part, to said personal injuries and death, then in that event, you should find for the plaintiff regardless of any other fact or circumstance in this case.''

The companion instruction is as follows: ''The court

charges the jury that the law of this state in force at the time that Mrs. Ganie Watson is said to have been struck and injured by the automobile truck about which the witnesses have testified provides that no person running or operating, or causing to be run or operated, a motor vehicle, shall pass a foot passenger walking in the roadway of the highway, at a greater rate of speed than eight miles an hour, and if you believe from a preponderance of the evidence that the defendants negligently operated, or caused the truck in question to be operated, at an unlawful or negligently excessive rate of speed or in a reckless, negligent or careless manner at the time and place about which the witnesses have testified and that said negligence, if any, proximately caused or contributed, in whole or in part, to the personal injuries and resulting death suffered by Mrs. Ganie Watson on the occasion in question, you should find for the plaintiff.''

It will be observed that the first instruction, supra, was peremptory in its nature, because the proof showed that the driver was operating his car at a greater rate of speed than eight miles per hour, and the instruction was practically peremptory as to the application of an eight-mile limit, if such existed; but the instruction was broad enough to invoke the state law as to passing pedestrians at a greater rate of speed than eight miles per hour, and the court's construction of certain ordinances. We will first consider the ordinances:

The entire traffic ordinance of the city of Meridian was introduced in evidence, and we have carefully examined it. Section 25 thereof prohibits motor vehicles from ''emerging from any alley, stable, garage, filling station, or any other place into or upon any public highway of the city at a greater rate of speed than six miles per hour.'' Appellee argues to this court that this ordinance applies to, and justifies, the first instruction, saying, in effect, that, because the automobile was emerging from

a subway or underpass, this ordinance was violated. That part of the highway beneath the railroad was as much the highway as any other portion, and it would require a vivid imagination to apply this ordinance to the state of facts here. ''Emerging from any other place'' means of that character, and does not mean passing from one part of the public street to the other.

Ordinance, section 41, forbids operators of motorcars from operating at such rate of speed as may be unreasonable or unsafe, under the circumstances; and also contains this language: ''Nor at any greater rate of speed than may be indicated by any traffic sign on the street, nor in any case at more than fifteen miles an hour.'' Appellee argues that the sign at either entrance to the covered portion of the underpass is authorized by this ordinance, and that the words, ''reduce speed to eight miles per hour,'' was notice to the traveling public that it was a violation of the law to travel at the place where Mrs. Watson was killed at a greater rate of speed than eight miles an hour.

If it be conceded that this sign printed on the columns at the entrances to the underpass should be construed to be a valid ordinance, appellees' contention must fail, because Mrs. Watson was not injured while traveling on that portion of the street in the underpass; the place where she was injured was twenty-seven feet therefrom, and, so far as that part of the ordinance is concerned, could not be made to apply to the uncovered portion of the street. The very location of the signs indicates that the city authorities intended to limit the speed within the covered portion of the subway or underpass. It is true that the witnesses speak of the entire excavated portion of the street, the covered part, and the approaches thereto, as the subway; but these signs were so placed as to indicate that the driver of a vehicle should reduce his speed on entering, and until he left, the covered portion of the subway. None of the ordinances offered with

reference to the speed limit of eight miles an hour were applicable to this case.

Appellee next insists that section 6681 of Hemingway's Code of 1927, chapter 116, Laws of 1916, applies to this case; and justifies the giving of the two instructions which we have quoted above. The applicable part of this section is as follows: "No person . . . operating a motor vehicle, shall pass *a person driving a horse . . . or foot passengers walking in the roadway of the highway,* at a greater rate of speed than eight miles per hour," etc. This italicized part of the section is omitted from the Code of 1930 (section 5570). Appellee earnestly insists that this statute applies to the case before us.

We are clearly of the opinion that Mrs. Watson, at the time she was crossing, was at this place, which, in our opinion, was a marked crossing, evidenced by the steps on the east side, by the guard rail for the protection of foot passengers ascending and descending, the steps, and also by the guard rail on the west side, which was a clear marking of the place as a point for foot passengers to cross. These guard rails on either side, and these steps clearly identify the place as a crossing; and a foot passenger, walking in the highway is as much such when he is proceeding across the highway as at any other time. In the absence of ordinances regulating speed, the state law would apply in a municipality, as well as on the rural highway. Mrs. Watson, in crossing this street, was a passenger walking along the highway. This conclusion, however, is not final in solving this case. The traffic ordinances of the city of Meridian show that the subject of traffic regulation was taken over by the city, regulating the speed within the corporate limits, which it was authorized to do, by virtue of chapter 201 of the Laws of 1928, the applicable portion of which is in this language:

"Provided, however, that the governing authorities in cities, towns and villages, may, in their discretion, form

and regulate the traffic rules within the corporate limits of the city, town or village and regulate the speed and fix the speed limit at which motor vehicles may be operated within the corporate limits of the city, town or village, or any part thereof, by an ordinance setting out the traffic rules and declaring what rate of speed shall be reasonable and proper, but the speed limit so fixed within the city, town or village shall not exceed thirty miles per hour, provided that all municipalities shall place signs at points where the main highways enter the municipality showing the speed limit fixed for the municipality.''

The portion of the statute above quoted delegates, with certain limitations, to the governing authorities of municipalities the power to fix their own traffic rules within the corporate limits, within the bounds fixed by the statute. This is a wise provision, permitting the governing authorities of municipalities to provide against congestion of traffic, and the regulation of traffic at points known to be dangerous; and on the other hand, it might be that, while the state undertook to regulate the speed when vehicles drawn by horses were passing pedestrians, within an area crowded with motor vehicles and all forms of traffic, the legislature evidently recognized that the governing authorities of municipalities could better control the situation. At any rate, there being no ordinance of the city of Meridian in regard to the rate of speed at the particular point at which Mrs. Watson was killed, the city ordinances permitted motor vehicles to pass that point at a greater rate of speed than eight miles an hour, unless such speed was unreasonable under the circumstances. Six miles per hour might have been unreasonable, under the circumstances of this case, or in a given case; whereas, fifteen miles an hour would not have been unreasonable at another time, and under other circumstances. The municipality having regulated the traffic within its limits, under the provisions of chapter

201, supra, the state regulation of eight miles an hour in passing pedestrians walking in the highway does not apply. So we think it was manifestly reversible error to have given these instructions.

But counsel for appellee earnestly insist that, on the face of the record, appellee was entitled to a peremptory instruction on the question of liability, and ask us to say, as a matter of law, that Mrs. Watson was guilty of no negligence, under the facts and circumstances of this case. While it is the duty of the driver of an automobile to be on the lookout, at the same time, a pedestrian crossing the street also has the duty to be on the lookout for the approach of automobiles or vehicles; and it cannot be said, as a matter of law, that Mrs. Watson was guilty of no negligence. The jury might infer that she was guilty of some negligence in crossing this street at this place and time, and in the manner shown by the record herein.

For the giving of these two instructions as to the rate of speed, this cause must be reversed and remanded for another trial.

Reversed and remanded.